Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 5154 | **DATE** | March 24, 2004 |
| **CASE TITLE** | Sandra Ann Chambers, et al  v  Holsten Management Corp., et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Hearing
(5) ☐ Status hearing
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]

Memorandum Opinion and order entered. Accordingly, defendant's motions to dismiss Counts I through XI are granted. All other pending motions are denied as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| X | Notices mailed by judge's staff. | | MAR 25 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | 61 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| GDS | courtroom deputy's initials | 2004 MAR 25 PM 4:09 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

SANDRA ANN CHAMBERS, individually, in her )
official capacity as president of Sutherland Tenants )
Council (STC), and on behalf of all others similarly )
situated in the past, present, and future, ANGELA )
CHAMBERS, individually and on behalf of all )
others similarly situated in the past, present, and )
future, )
)
           Plaintiffs, )
)
v. )
)
HOLSTEN MANAGEMENT CORPORATION, )
CENTURY PLACE DEVELOPMENT, )
HEARTLAND ALLIANCE, CHICAGO )
CONNECTIONS, TRAVELERS & IMMIGRANTS )
AID, SID MOHN, PETER HOLSTEN, STEVE )
JOHNSON, LARRY HOWARD BENJAMIN )
CLARK and SARAH DART, )
)
           Defendants. )

**DOCKETED**

MAR 2 5 2004

No.   02 C 5154

Judge Robert W. Gettleman

## MEMORANDUM OPINION AND ORDER

Acting pro se, plaintiffs Sandra Ann Chambers and Angela Chambers, on behalf of themselves and all others similarly situated, filed an amended putative class action complaint against defendants Holsten Management Corporation ("Holsten Management"), Century Place Development ("Century Place"), Heartland Alliance, Chicago Connections, Travelers and Immigrants Aid, Sid Mohn, Peter Holsten, Steve Johnson, Larry Howard, Benjamin Clark, and Sarah Daft. In Count I, plaintiffs allege that defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 et seq., through a rent overcharging scheme, as well as "questionable issues concerning the phone and vending machine funds." In Count II, plaintiffs assert that defendants violated the Fair Debt Collection Practices Act (the

61

"FDCPA"), 15 U.S.C. §§ 1692 et seq. The remaining counts allege claims under various state law theories, including violation of the Chicago residential Landlord and Tenant Ordinance (Count III), breach of contract (Count IV), breach of implied warranty of habitability (Count V), violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS §§ 505/1 et seq. (Count VI), common law fraud (Count VII), negligent hiring and supervision (Count VIII), unfair enrichment (Count IX), and intentional infliction of emotional distress (Count X), as well as an additional count seeking injunctive relief (Count XI).

Defendants have moved to dismiss Count I for failure to state a claim under Fed. R. Civ. P. 12(b)(6), as well as for failure to plead fraud with particularity pursuant to Fed. R. Civ. P. 9(b). Defendants also seek dismissal of Count II, arguing that they are not "debt collectors" within the meaning of the FDCPA. For the reasons stated below, the court grants defendants' motion to dismiss Counts I and II, and declines to exercise supplemental jurisdiction over Counts III through XI.

## DISCUSSION

Plaintiffs are residents of Sutherland Apartments, an apartment complex located in Chicago, Illinois, and managed by defendant Holsten Management. According to the amended complaint, defendants Century Place, Heartland Alliance, Chicago Connection, and Travelers and Immigrants Aid ("TIA") are part-owners of Sutherland Apartments. The individual defendants are all current or former employees of defendants Holsten Management and Century Place: Peter Holsten is the President of Holsten Management, Sid Mohn is the President of Century Place, Steve Johnson oversees the day-to-day operations of Sutherland Apartments, Larry Howard is the former residential property manager/agent for Sutherland Apartments,

2

Benjamin Clark is the current residential property manager/agent for Sutherland Apartments, and Sarah Dart is the current assistant residential property manager/agent for Sutherland Apartments.

Plaintiffs allege that, on February 17, 2002, Howard informed them that the City Trust Fund Subsidy Program was increasing the subsidy it paid to Holsten Management by $25, to $175. Plaintiffs believed that the increased subsidy "logically should have decreased [each of the] Chambers' rent $25.00."

Between February 21, 2002, and April 9, 2002, plaintiffs exchanged correspondence with Holsten Management in which plaintiffs inquired about "any discrepancy" - presumably, the fact that plaintiffs' portions of their respective rents did not decrease as a result of the increased subsidy from City Trust Fun Subsidy Program. Holsten Management responded that the request for a subsidy increase was made to the City Trust Fund Subsidy Program to allow Holsten Management to "maintain the building while keeping rents affordable for our tenants."

Plaintiffs maintain that Holsten Management's response is inconsistent with the purpose of the City Trust Fund Subsidy Program. According to the amended complaint, Howard and Dart threatened plaintiffs with eviction if they did not "go along with allowing the landlords (Holsten, Century Place, Heartland, Chicago Connection, TIA), Mohn and P. Holsten to administer the City Trust Fund in this manner." Plaintiffs further allege that they "[were] threatened that if [they] kept complaining about it, [they] would lose [their] City Trust Fund."

According to the amended complaint, "one or more of the defendants have directly, indirectly, assisted in, and/or have not otherwise stopped the intentional and malicious assessment (charges and/or billings) to past and/or present tenants... [and] directly and/or indirectly assessed, attempted to collect, and/or collected excessive rents" from plaintiffs and

3

other members of the putative class." The amended complaint alleges that most tenants at Sutherland Apartments are "paying a considerable amount of rent that far exceeds the market-value of their apartments," and that many apartments do not comply with the Chicago building code. According to plaintiffs, to receive a lower rent, "one must either be a friend of Howard, Clark, Dart and Johnson, and/or be sexually involved with or working for 'free' for Howard."

The amended complaint further alleges that the Sutherland Tenant Council has not received its public telephone and vending machine commission checks and that defendants have refused to account for those sums. According to plaintiffs, Clark directed a member of the maintenance staff to remove the security chain from the vending machines, and then demanded removal of the machines and prevented them from being refilled. Plaintiffs allege that another tenant has been permitted to operate her vending machines, notwithstanding the fact that she has no agreement with the Sutherland Tenants Council.

According to the amended complaint, Holsten Management has also failed to account for $42,185 that was allegedly allocated for a visitor entry system which has not yet been installed. Plaintiffs further allege that numerous tenants have been charged an "illegal" fifty-dollar air conditioning fee and were never informed of their right to dispute the charge.

Plaintiffs characterize the foregoing acts as a pattern of racketeering activity with the meaning of 18 U.S.C. § 1961(5) and allege that they have suffered injuries in their business and property as a result, including over-payment of rent, eviction or threatened eviction, as well as loss of employment due to stress. Plaintiffs further allege that defendants' activities violate the FDCPA.

## **DISCUSSION**

1.  Count I: RICO

Defendants Holsten Management, Peter Holsten, Johnson, Clark, Dart and Howard (the "Holsten defendants") have moved to dismiss Count I for failure to allege adequately, (1) predicate criminal acts, (2) a pattern of racketeering activity, (3) a sufficient effect on interstate commerce, and (4) causation. Defendants Century Place, Heartland Alliance, Chicago Connections, TIA, and Sid Mohn (the "Heartland Alliance" defendants) adopt the Holsten defendants' arguments, and further argue that, (1) none of the Heartland Alliance defendants was involved in any of the predicate acts alleged in the amended complaint, (2) none of the Heartland Alliance defendants is alleged to have control over the management or operation of the RICO enterprise, and (3) the Heartland Alliance defendants cannot be held vicariously liable for the alleged acts of the Holsten defendants.

For the reasons stated below, the court concludes that plaintiffs have not provided sufficient detail regarding their fraud allegations as required by Fed. R. Civ. P. 9(b) and that plaintiffs' allegations regarding extortion are insufficient to state a claim under Fed. R. Civ. P. 12(b)(6). Because the insufficiency of plaintiffs' allegations regarding predicate acts warrant dismissal of plaintiffs' RICO claim, the court need not reach the merits of defendants' other arguments in favor of dismissal of Count I.

RICO was originally enacted "in an attempt to eradicate organized, long-term criminal activity." Mira v. Nuclear Measurements Corp., 107 F.3d 466, 473 (7th Cir. 1997) (quoting Midwest Grinding Co., Inc. v. Spitz, 976 F.2d 1016, 1019 (7th Cir.1992)). RICO makes it unlawful, (1) to invest money derived from a pattern of racketeering activity or through the

collection of an unlawful debt in an enterprise, 18 U.S.C. § 1962(a), (2) to acquire or maintain an interest in or control of an enterprise through a pattern of racketeering activity or through collection of an unlawful debt, 18 U.S.C. § 1962(b), or (3) for any person employed by or associated with any enterprise to conduct the enterprise's affairs through a pattern of racketeering activity or collection of an unlawful debt, 18 U.S.C. § 1962(c). 18 U.S.C. § 1964(c) authorizes a private suit by "[a]ny person injured in his business or property by reason of a violation of Section 1962."

A "pattern of racketeering activity" is defined in 18 U.S.C. § 1961(5) as the commission of at least two of the predicate acts enumerated in 18 U.S.C. § 1961(1) within a ten-year period.[1] At page 10 of their response brief, plaintiffs acknowledge that the predicate acts forming the basis for their RICO claim in Count I are fraud and extortion.

Curiously, at page 13 of their response brief, plaintiffs assert that they "have not made a claim for mail fraud," implying that their RICO claim is based on state-law fraud. As defendants point out, however, fraud is not one of the state law crimes that RICO includes as a predicate act. See 18 U.S.C. § 1961(1)(A). Only violations of particular federal fraud statutes, specifically wire and mail fraud, constitute predicate acts. See 18 U.S.C. § 1961(1)(B). Accordingly, to the extent that plaintiffs' RICO claim is based on state-law fraud, it fails as a matter of law.

Plaintiffs fare no better proceeding under mail or wire fraud. Rule 9(b), which provides that "[i]n all averments of fraud ..., the circumstances constituting fraud ... shall be stated with

---

[1] As the Seventh Circuit has noted, two predicate acts alone are insufficient to establish a "pattern" of racketeering activity. A RICO plaintiff must also satisfy the "continuity plus relationship test": the predicate acts must be related to one another and pose a threat of continued criminal activity. See Midwest Grinding Co., Inc. v. Spitz, 976 F.2d 1016, 1022 (7th Cir. 1992).

6

particularity," applies to allegations of mail and wire fraud and by extension to RICO claims that rest on predicate acts of mail and wire fraud. Jepson, Inc. v. Makita Corp., 34 F.3d 1321, 1327 (7th Cir. 1994). Rule 9(b) requires the plaintiff to state "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." Id. (quoting Uni*Quality, Inc. v. Infotronx, Inc., 974 F.2d 918, 924 (7th Cir. 1992)). The complaint must also allege facts from which it could be inferred that the defendants engaged in the scheme with fraudulent intent. Jepson, 34. F.3d at 1328 (citing McDonald v. Schencker, 18 F.3d 491, 495 (7th Cir. 1994)). Moreover, in a multiple defendant case, Rule 9(b) requires a RICO plaintiff to plead sufficient facts to notify each defendant of his alleged participation in the scheme. Goren v. New Vision Intern., Inc., 156 F.3d 721, 726 (7th Cir. 1998).

As defendants point out, plaintiffs' fraud allegations are lacking in two critical respects. First, plaintiffs have not adequately alleged that defendants made any misrepresentations at all, intentional or otherwise, to plaintiffs. See Emery v. American General Finance, Inc., 71 F.3d 1343, 1346 (7th Cir. 1995) ("[A]ll the [mail-fraud] statute punishes is *deliberate* fraud... where in order to get money or something else of monetizable value from someone you make a statement to him that you know to be false, or a half truth that you know to be misleading, expecting him to act upon it to your benefit and his detriment.") (emphasis in original). Second, plaintiffs have failed to articulate each defendant's role in the alleged fraud.

From the face of the amended complaint, it appears that plaintiffs are challenging Holsten Management's representation in a letter dated April 9, 2002, that the increase in the City Trust subsidy was to cover increased costs so that Holsten Management could "maintain the building

7

while keeping rents affordable to our tenants." Plaintiffs allege that this statement is "inconsistent with the agenda of the City Trust Fund program," and to that end attach the 2001 Annual Report of the Chicago Low-Income Housing Trust Fund as an exhibit to the amended complaint. The Annual report, however, which states that the Fund "giv[es] grants to building owners and developers who agree to reduce rents to accommodate very low-income residents," does not appear to conflict with defendants' alleged representations to plaintiffs. Because plaintiffs have not articulated which aspects of defendants' representations were false, if any, their fraud allegations are insufficient under Rule 9(b).

As defendants point out, nothing in the 2001 Report or plaintiffs' amended complaint suggests that additional subsidies paid to owners and developers must reduce tenants' rents dollar for dollar when the increased subsidies were designed to cover increased costs. Nor have plaintiffs alleged that the City Trust Fund prohibits an increase in rent at the same time as an increased subsidy. Moreover, to the extent that defendants did make misrepresentations to plaintiffs, the amended complaint is devoid of allegations that defendants acted with any intent to defraud or with knowledge that their representations were false.

Second, the complaint does not distinguish among the acts of the various defendants, as required by Rule 9(b). To the contrary, plaintiffs allege generally that "the perpetuated acts of the defendants amount to malicious intentions and schemes to defraud [plaintiffs]" and that "one or more of the defendants have directly, indirectly, assisted in, and/or have not otherwise stopped the intentional and malicious assessment (charges and/or billings) to past and/or present tenants." Although certain defendants are occasionally referenced with respect to specific interactions involving plaintiffs, the amended complaint fails to notify each defendant of his role in the

alleged scheme and does not attribute any alleged "misrepresentations" to any particular defendant. Accordingly, plaintiffs' allegations of fraud lack the detail required Rule 9(b).

This leaves plaintiffs' claims regarding "excessive" rents and extortion. Although plaintiffs allege that their rent was "excessive," the amended complaint does not assert that the rental rates were somehow fraudulent, or criminal in any other respect that would bring them within § 1961's purview. Although plaintiffs attach a chart to their response brief entitled "Annual Gross Household Income Limits for 2002/2003 and Recommended Rent Portions to be Paid by Subsidized Tenants," to bolster their assertion that their rents were "too high," this exhibit does not save plaintiffs' RICO claim. The exhibit includes two charts, one of which calculates a recommended rental portion based on gross income, and another that calculates a recommended rental portion based on unit size.

As defendants point out, the chart details "recommended" rates, confirming that the rental rates are not required by the City Trust Fund Subsidy Program, much less any criminal statute that is included within RICO's definition of predicate acts. Moreover, nothing in the plaintiffs' response brief or amended complaint suggests that the defendants deviated from these figures in calculating rents. An allegation that some tenants may have paid less than others is not meaningful in the absence of allegations regarding the tenants' earnings or the size of their units.

Further, even if the rates were beyond those set forth in the exhibit, plaintiffs' complaint, drawing all reasonable inferences in their favor, could be construed to allege only that defendants engaged in the "collection of unlawful debt" as prohibited by 18 U.S.C. § 1962(a)-(c). As noted by defendants, however, for the purposes of RICO, "collection of unlawful debt" is limited to

debts from gambling activity and extremely usurious loans. See 18 U.S.C. § 1961(6); Nolen v. Nucentrix Broadband Networks Inc., 293 F.3d 926 (5th Cir. 2002).

Plaintiffs' allegations regarding extortion are also insufficient. As defendants point out, extortion is defined as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear." 18 U.S.C. § 1951(b)(2). Plaintiffs allege, among other things, that defendants have threatened tenants with eviction in response to their failure to pay rent and electrical charges stemming from their use of air conditioners. Plaintiffs have not alleged why this conduct is wrongful, however. In the absence of allegations that defendants were somehow prohibited from, (1) raising rents, (2) charging the air-conditioner-related fees, and (3) seeking eviction of those tenants who refused to pay their rents and/or fees, plaintiffs have failed to allege extortionate conduct on the part of defendants. See Rothman v. Vedder Park Management, 912 F.2d 315, 318 (9th Cir. 1990) (plaintiff failed to adequately plead that landlord's threats of increased rent amounted to extortion in absence of allegations that landlord could not increase rent in response to a tenant's failure to sign his lease); Whitehead v. Gateway Chevrolet, 2004 WL 316413, *6 (N.D.Ill. February 2, 2004) (plaintiff failed to adequately plead extortion because plaintiff failed to allege why letter stating defendant's intention to seek legal recourse for plaintiff's default was "wrongful.").

It appears to the court that plaintiffs' RICO allegations, whether framed in terms of subsidies, excessive rents, or threatened eviction, are part of what plaintiffs conceive of as a fraud perpetrated by defendants to obtain increased rent from their tenants. As noted above, however, state-law fraud is not actionable under RICO, and to the extent that plaintiffs are seeking to allege mail or wire fraud, their allegations do not comport with the particularity

10

required by Rule 9(b). Plaintiffs have not alleged any misrepresentations by defendants or an intent to defraud, nor have plaintiffs articulated the role of each defendant in the alleged fraudulent scheme. Accordingly, the court dismisses Count I.

2.   Count II: FDCPA

Defendants argue that plaintiffs' claim under the FDCPA must be dismissed because none of the defendants is a "debt collector" within the meaning of the Act. Plaintiffs respond that whether or not defendants are debt collectors is a question of fact that should not be determined on a motion to dismiss. For the reasons stated below, the court concludes that the defendants are not "debt collectors," as that term is defined by the FDCPA, and dismisses Count II.

The FDCPA prohibits a "debt collector" from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). "Debt collector" does not include "any person collecting or attempting to collect any debt... which was not in default at the time it was obtained by such person," 15 U.S.C. § 1692(a)(6)(F)(iii), unless that person is a creditor who, in the process of collecting his own debts, uses any name other than his own to collect those debts. See 15 U.S.C. § 1692(a)(6).

The Holsten defendants cite to Franceschi v. Mautner-Glick Corp., 22 F. Supp. 2d 250 (S.D.N.Y. 1998), in support of their contention that they are not "debt collectors" within the

meaning of the FDCPA. The Franceschi court, relying on 15 U.S.C. § 1692(a)(6)(F)(iii), held that a landlord's management agent was not a "debt collector" under the FDCPA since it "had not only the right but also the obligation to collect [plaintiff's] rent before as well as after such debt was 'in default.'" Franceschi, 22 F. Supp. 2d at 253. Among other things, the Franceschi court relied on the rental agreements referenced in the plaintiff's complaint, which explicitly defined the management agent as the landlord's agent for purposes of collecting rent. Id.

In the instant case, the rental agreements attached to the amended complaint define Holsten Management as the Lessor and Owner or Authorized Management Agent, and further provide that "lessee shall pay to the Lessor or Lessor's agent the monthly rent set forth above on or before the first day of each and every month...." Accordingly, for the purposes of collecting rent due and owing, the Holsten defendants, which includes Holsten Management and its agents Peter Holsten, Johnson, Clark, Dart and Howard, are not "debt collectors" within the meaning of the FDCPA. See 15 U.S.C. § 1692(a)(6)(F)(iii).

As to the Heartland Alliance defendants, the court notes that plaintiffs' amended complaint is devoid of allegations that any of them attempted to collect any rents or other sums from plaintiffs. Accordingly, plaintiffs have failed to state a claim under the FDCPA against the Heartland Alliance defendants, as well.

For these reasons, Count II is dismissed as to all defendants.

3. Counts III-XI

Having dismissed plaintiffs' federal causes of action, the court declines to exercise supplemental jurisdiction over plaintiffs' remaining state law claims under 28 U.S.C. § 1367(c)(3).

## CONCLUSION

For the reasons stated herein, defendants' motions to dismiss Counts I through XI are granted. All other pending motions, including plaintiffs' motions for temporary restraining orders (Docket Nos. 34 and 44) and their motion for appointment of a special prosecutor (Docket No. 56) are denied as moot.

**ENTER:** **March 24, 2004**

*[signature]*

**Robert W. Gettleman**
**United States District Judge**